IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BEATRICE FRANK | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KRAPF GROUP, INC., et al. | : | NO. 22-2462 |

MEMORANDUM

Bartle, J.                                         March 4, 2024

Plaintiff Beatrice Frank brings this action against defendants Krapf Group, Inc. ("Krapf"), Janet Moran, and Melissa Lichty for disparate treatment and hostile work environment based on her race and national origin, in violation of Title VII of the Civil Rights Act of 1964, §§ 2000e, et seq. ("Title VII"), and the Pennsylvania Human Relations Act of 1955, 43 P.S. §§ 951-63 ("PHRA") (Counts I-IV).[1]  Additionally, she claims defendants retaliated against her in violation of Title VII (Count V) and the PHRA (Count VI) and that defendants discriminated and retaliated against her on the basis of her race in violation of 42 U.S.C. § 1981 (Count VII).  Finally, she alleges that defendants interfered with her ability to take leave under the Family Medical Leave Act, 29 U.S.C. §§ 2601, et.

_____

1.   While Title VII does not extend liability to individual employees of corporate employers, the PHRA does.  See Dici v. Commonwealth of Pa., 91 F.3d 542, 552-53 (3d Cir. 1996); see also 43 Pa. Cons. Stat. Ann. § 9559(e).

seq. ("FMLA") and retaliated against her for taking such leave (Count VIII).

Before the court are plaintiff's motion for partial summary judgment as to Counts V (Title VII - retaliation), VI (PHRA - retaliation), VII (42 U.S.C. 1981 - retaliation), and VIII (FMLA) (Doc. # 49) and defendants' motion for summary judgment as to all claims (Doc. # 47).

I

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). The court must draw all inferences in favor of the nonmoving party. See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

Summary judgment is granted when there is insufficient evidence in the record for a reasonable factfinder to find for the nonmovant. See Anderson, 477 U.S. at 252. "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be

-2-

evidence on which the jury could reasonably find for [that party]." Id.  In addition, Rule 56(e)(2) of the Federal Rules of Civil Procedure provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

II

The court first considers the defendants' motion for summary judgment.  In doing so, facts are taken in the light most favorable to plaintiff.

Krapf provides transit, paratransit, and charter transportation services.  Frank worked as its Human Resources Management Systems Manager from April 24, 2019 until she was terminated on September 17, 2020.  In her position, she was responsible for managing employee information in UltiPro, an employee compensation data system.  She was also charged with ensuring the company complied with Affordable Care Act requirements, maintaining relationships with Krapf's benefits providers and brokers, and handling requests for FMLA leave.

Frank applied for this position through a recruiter. Prior to being offered the position, she interviewed on April 2, 2019 with Janet Moran, Vice President of Human Resources of Krapf, and Melissa Lichty, its Director of Human Resources.  The

parties dispute what Frank was told about receiving a bonus.[2]
She states in her deposition that she understood herself to be
bonus-eligible but that such a bonus would not be certain.
However, Lichty testified that the position was not bonus
eligible and that she did not discuss the possibility of a bonus
with Frank.  Upon starting her job, Frank was supervised by
Lichty, who in turn was supervised by Moran.  Colleen Leonard,
the prior Human Resources Management Systems Manager, continued
to work for Krapf as a consultant.  She reported to Moran.

     During orientation, Frank was presented with Krapf's
anti-harassment and discrimination policy.  She also reviewed an
orientation checklist with various of Krapf's policies.
Regarding confidentiality, the checklist states "you will be
FIRED (term not used lightly) for using information from HR
inappropriately.  You are to be discreet in your knowledge of
employees' information."  Parties dispute whether Frank was
provided additional information as to what constitutes
"inappropriate" usage.  Plaintiff does not recall any further
discussion or clarification as to the definition.  However,
Lichty stated that she informed Frank during orientation that

---

2.   Defendants misquote Lichty's email to Frank's recruiter in
their statement of facts.  The full language is as follows: "No
bonus opportunity at this time.  There will be potential, but I
would rather I mention this to her so she doesn't come in with
the impression it's certain."

viewing employee salary information, as occurred here, would be an example of inappropriate use.

On or about March 2020, many employees in Human Resources were furloughed for a period of three months due to the COVID-19 pandemic.  Only Moran, Lichty, Frank, and Amanda Giles, an HR Service Center Coordinator, a level below Frank, remained.  These four employees continued to work from home through the second week of June 2020.  At that point, employees were required to return to the office.  Frank requested to continue working from home.  Lichty permitted her to do so on a temporary basis.[3]

At some point in May or June of 2020, Frank learned that while she was not paid a bonus, other employees were.  On July 1, 2020, Frank met with Lichty to ask whether she was eligible for a bonus and why she did not receive one.  Frank testified that when they met on July 17, 2020, Lichty stated that Krapf did not pay out bonuses to any employees due to financial constraints relating to the Covid-19 pandemic.[4]  The

---

3.   The exact details of this arrangement are not present in the record but there is evidence that Frank was permitted to work remotely each Wednesday up until the time she took FMLA leave in August 2020.

4.   Lukesh's investigative report provides additional context regarding this discussion in his notes from his interview with Lichty.  He wrote that Lichty "described how budgetary constraints have caused Krapf to pull back on bonuses.  What [Lichty] failed to mention is that Krapf did pay bonuses to bonus-eligible people based on their performance in 2019, and

evidence shows that in the Human Resources department Moran and Lichty received bonuses in 2020.  After Frank's meeting with Lichty, Frank accessed Ultipro in order to view employee salary and bonus data.

Thereafter, on July 23, 2020, Frank emailed a complaint to Lichty and Alison Bryant, the Director of Human Capital.  Her complaint outlined allegedly discriminatory treatment.  First, Frank discussed the lack of responsiveness from Giles, the HR Service Center Coordinator who worked in a position below that of Frank.  Next, Frank complained about the fact that her projects and job responsibilities would be reassigned from her to Leonard, who previously held her role, as well as Moran's hostile communication style toward her. Finally, she complained that she had not received a bonus while other employees had.  She alleged that this differential treatment was due to her race and national origin.  Frank does not dispute that she accessed confidential salary and bonus information of employees for the purposes of drafting her internal complaint.

On July 29, 2020, Krapf hired an independent third-party, Rich Lukesh, to investigate Frank's complaint.  On August 19, 2020, he reported to Krapf that he found Frank's allegations

that the pulling-back of bonuses related to the current year of 2020."

to be unsubstantiated.  He recommended severance as the employment relationship was irreconcilable.

While Lukesh's investigation was pending, Frank called Lichty and informed her that she would need to take FMLA leave, though she did not identify a date such leave would begin.[5]  On this call, Lichty offered her a severance package.  Frank memorialized her FMLA request via email on August 13, 2020.  On August 17, 2020, Lichty again offered Frank a severance package in lieu of FMLA leave.  Frank did not accept this offer and instead asked for the paperwork necessary to start her FMLA leave.  She requested that her leave begin that day.  Lichty provided her with the necessary paperwork the following day.  On August 21, 2020, Lichty again requested by email that Frank consider a severance package.  That day, Krapf's counsel, Charles Shute, presented a severance package of six weeks' pay in exchange for an agreement not to sue.  On August 27, 2020, Frank returned her FMLA paperwork Krapf required.  On September 3, 2020, she rejected Krapf's renewed severance offer.

In September 2020, Lichty requested an audit trail from Ultipro, which documented Frank's activity within the

_____

5.    There is a dispute in the record as to whether Frank identified her need for FMLA leave on this call.  Frank stated that she would need such leave on the call and that in response, Lichty offered Frank a severance package.  Lichty, however, insisted that Frank only discussed the possibility of a part-time work arrangement.

system.  Lichty requested this report after she learned that
Frank had complained about not receiving a bonus while others
had.  Lichty sought the report because "the only way [] Frank
would have been aware of this information is if she had accessed
confidential employee bonus information."  Krapf received the
results of the audit on September 15, 2020.  The investigation
confirmed that she had accessed bonus information through
Ultipro.  Frank conceded at her deposition that she obtained
such information for the purposes of her complaints.

Frank was terminated on September 16, 2020.  On
January 7, 2021, Frank filed her charge of discrimination with
the EEOC.  On June 23, 2022, Frank filed the instant lawsuit.

III

Frank alleges in Counts I and III that defendants
treated her differently due to her national origin and race in
violation of Title VII.  She also maintains that this conduct
violated the PHRA (Count VI) and 42 U.S.C. § 1981 (Count VII).[6]
Race and national origin discrimination claims require
application of the burden-shifting framework articulated in
McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

---

6.   The analysis of a disparate treatment claim under Title VII
and the PHRA is the same.  Atkinson v. Lafayette Coll., 460 F.3d
447, at 454 n.6 (3d Cir. 2006).  To prove a claim under 42
U.S.C. § 1981, plaintiff must show that her race was a but-for
cause of the adverse employment action.  Comcast Corp. v. Nat'l
Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1014-15 (2020).

First, plaintiff must show a prima facie claim of discrimination.  Next, the burden of production shifts to the defendants to articulate a legitimate non-discriminatory reason for the adverse employment action.  Finally, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the purportedly legitimate reason is merely pretext.  See Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 253 (1981).

Whether a prima facie case of employment discrimination exists is a question of law which is to be decided by the court.  Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003).  A plaintiff must demonstrate: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) circumstances existed that raised an inference of unlawful discrimination.  Nagle v. RMA, The Risk Mgmt. Ass'n, 513 F. Supp. 2d 383, 387-88 (E.D. Pa. 2007).  There is no dispute as to the first factor.  As an African-American woman originally from Haiti, she is a member of two protected classes, one based on her race and the other based on national origin.

Frank alleges two adverse employment actions: first that she was denied a bonus and second that she was terminated on September 17, 2020.  Defendants argue that failure to receive a bonus is not an adverse employment action as a matter of law.

This argument is unavailing.  See, e.g., Carlson v. Qualtek Wireless, LLC, No. 22-2569, 2023 WL 5094566, at *2, *4 (3d Cir. Aug. 9, 2023); Igwe v. E.I. DuPont De Nemours & Co., 180 F. App'x 353, 355 (3d Cir. 2006).

There is evidence that Frank was told prior to her employment that there was a potential for a bonus.  According to Lukesh, when Frank questioned Lichty regarding her bonus eligibility, Lichty misleadingly stated that "budgetary constraints have caused Krapf to pull back on bonuses."  Krapf now claims that Frank was not eligible for a bonus.

In June 2020, Krapf paid bonuses to Moran, its Vice President of Human Resources, and Lichty, its Director of Human Resources.  The bonus payments to Moran and Lichty are relevant on the issue of discrimination only if they are comparators with Frank.  See, e.g., Loving v. FedEx Freight, Inc., Civ. A. No. 18-508, 2020 WL 2306901, at *8 (M.D. Pa. May 8, 2020).  A comparator must be "similarly situated" in "all relevant respects" and in making this determination, a court may consider whether the employees had the same job responsibilities, whether they had the same supervisors, and whether they engaged in similar misconduct.  Wilcher v. Postmaster Gen., 441 F. App'x 879, 881-82 (3d Cir. 2011); Crawford v. Verizon Pa., Inc., 103 F. Supp. 3d 597, 604-06 (E.D. Pa. 2015).

-10-

Moran and Lichty are inappropriate comparators.  Both were Frank's supervisors, had worked at Krapf for much longer than Frank had at the point which they received their bonuses, and while they worked in the same department, Frank had different job responsibilities than either individual defendant. The circumstances of the two supervisors are insufficiently similar to that of Frank.  No employees at Frank's level, regardless of their race, received a bonus.  Thus Frank has not established a prima facie case of discrimination relating to her failure to receive a bonus.

The court turns to the issue of whether Frank has established a prima facie case of race or national origin discrimination as to her termination.  There is evidence that Lichty and Moran characterized Frank as angry, which plaintiff maintains is a stereotype commonly applied to African-American women.  See, e.g., Curry v. Devereux Found., 541 F. Supp. 3d 555, 561 (E.D. Pa. 2021).  In Curry, plaintiff's employer explicitly compared her to the stereotype of an "angry black woman."  Id. at 562.  Here, neither Moran nor Lichty tied Frank's anger to her race.  Additionally, defendants made comments regarding Frank's hair on a few occasions, such as that her hairstyle was "interesting" or asking to touch her hair. "Stray remarks . . . by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were

made temporally remote from the date of decision." <u>Ezold v.</u>
<u>Wolf, Block, Schorr & Solis-Cohen</u>, 983 F.2d 509, 545 (3d Cir.
1992).  Lichty also discussed terminating another employee who
was African-American and stated that she was concerned he would
"play the race card."  However, evidence of differential
treatment must be tailored to the plaintiff's experience rather
than regarding other employees with the same protected
characteristic.[7]  <u>See, e.g.</u>, <u>Bullock v. The Child.'s Hosp. of</u>
<u>Phila.</u>, 71 F. Supp. 2d 482, 490 (E.D. Pa. 1999).  Frank has not
established a prima facie case of race discrimination.

In addition, there is no evidence in the record that
Moran, Lichty, or any other Krapf employees made discriminatory
comments related to Frank's country of origin.  The only
evidence Frank cites is that Lichty and Moran regularly
criticized Frank's communication style.  Moran did not accept
her statements at face value and required her to repeat what she
had said.  Due to these difficulties, Lichty often mediated
Frank's conversations with Moran.  Frank felt she "always had to
[] go above and beyond to prove myself, because [she] just
wasn't believed."  These difficulties with management and
communication are insufficient to raise an inference of

---

7.    There is also evidence that Giles, an HR Service Center
Coordinator, made discriminatory comments regarding another
African-American woman in the workplace.  However, she worked
below Frank and was not a decisionmaker and therefore, such
comments carry little weight.  <u>Ezold</u>, 983 F.2d at 545.

discrimination because there is no evidence that the criticisms were based on Frank's national origin.  See, e.g., Williams-McCoy v. Starz Encore Grp., Civ. A. No. 02-5125, 2004 WL 356198, at *8 (E.D. Pa. Feb. 5, 2004).  Frank has not established a prima facie case of national origin discrimination.

Even if Frank had established prima facie cases of race and national origin discrimination, defendants maintain that a legitimate, nondiscriminatory reason for terminating Frank: her improper use of confidential information.  Krapf's onboarding checklist, which Frank signed during her orientation, warns that employees "will be FIRED (term not used lightly) for using information from HR inappropriately.  You are to be discreet in your knowledge of employees' information."

To determine whether Krapf's reason for terminating Frank was pretext, the court examines the totality of the circumstances.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1086 (3d Cir. 1996).  Here, evidence relevant to the prima facie case as well as an employer's motivation for investigating an employee may be relevant to pretext.

While Frank had access to this data in the course of her job responsibilities, she admitted that she did access the salary and bonus information for the purposes of drafting her internal complaint.  This use was not part of her job responsibilities.  However, she maintains that such access was

-13-

not inappropriate because Krapf permitted those in her role to access the information.  She further argues that she was discriminated against because other employees, such as Leonard, the prior Human Resources Management Systems Manager, had the same level of access but were not punished.

Frank conflates access to information with use of it. While Leonard, a white woman, had access to confidential information as the Human Resources Management Systems Manager, the policy prohibited the non-work-related use of such information.  As Leonard did not commit a similar offense, she is not an appropriate comparator.  See, e.g., Brandt v. Thomas Jefferson Univ. Hosps., Inc., Civ. A. No. 19-1845, 2020 WL 919699, at *3 (E.D. Pa. Feb. 26, 2020) (citing Dykes v. Marco Grp., Inc., 222 F. Supp. 3d 418, 427 (E.D. Pa. 2016)).

Lichty states she requested the Ultipro audit trail after Frank informed her that she was aware certain employees had received bonuses.  There was a proper basis for Krapf to investigate whether Frank had improperly obtained confidential information after receiving her complaint.  Lichty reasonably believed that Frank could only have learned this information by reviewing other employees' records on Ultipro in violation of Krapf's policy.  There is no genuine dispute of material fact as to Krapf's motivation for investigating Frank.  Cf. Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 350-51 (3d Cir. 2022).

Frank argues that the court should not excuse Krapf's liability under Title VII because she did not use confidential information to assist a third-party in asserting a claim of discrimination, as in Johnson v. NewCourtland, Inc., Civ. A. No. 13-4238, 2015 WL 894320 (E.D. Pa. 2005).  This is a distinction without difference as Frank nevertheless violated Krapf's confidentiality policy.

Frank does not present sufficient evidence such that a reasonable jury would find that her termination was due to her race or national origin.  Defendants' motion for summary judgment will be granted as to these counts.

IV

Frank avers defendants created a hostile work environment based on her national origin (Count II) and national origin (Count IV) in violation of Title VII, the PHRA (Count VI) and 42 U.S.C. § 1981 (Count VII).  Defendants maintain that there is insufficient evidence to allow a jury to find that defendants' conduct created a hostile work environment.  A hostile work environment claim exists when plaintiff is discriminated against on the basis of a protected characteristic and such discrimination is severe or pervasive enough that it creates an abusive working environment.  Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986).

Plaintiff must show (1) she suffered intentional discrimination because of her race or national origin; (2) such discrimination was severe or pervasive; (3) she was detrimentally affected; (4) such "discrimination would detrimentally affect a reasonable person of the same race [or national origin] in that position" and (5) respondeat superior liability.  Sanchez v. SunGard Availability Servs. L.P., 362 F. App'x 283, 286 (3d Cir. 2010).  To determine whether conduct was severe or pervasive, a court may consider (1) frequency of the offensive conduct; (2) its severity; (3) whether it is physically threatening or humiliating; and (4) whether it unreasonably interferes with plaintiff's work performance. Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).  Facially neutral criticism or micromanagement are insufficient to establish an inference of discriminatory animus.  Blango v. City of Philadelphia, 643 F. Supp. 3d 535, 544 (E.D. Pa. 2022).

The stray comments regarding Frank's hairstyle do not demonstrate that she suffered a hostile work environment on the basis of race.  See id.  Defendants' motion for summary judgment will be granted as to this claim.

Frank relies on evidence that Giles, an HR Service Center Coordinator below Frank, made negative comments about another employee regarding her accent, which may be construed as discrimination on the basis of national origin.  However, Giles

-16-

is not a supervisor and is not empowered to take tangible
employment actions against Frank.  Vance v. Ball State Univ.,
570 U.S. 421, 431 (2013).  As Frank has not alleged that Krapf's
negligence resulted in the alleged hostile work environment,
Giles' comments are not relevant to this claim.  Id. at 424.

        Frank's treatment at Krapf does not constitute a
hostile work environment as a result of her national origin.
Thus summary judgment will be granted in favor of defendants as
to this claim.

                               V

        Under Title VII, Frank claims that defendants
retaliated against her (Count V).  She also maintains that this
retaliation violated the PHRA (Count VI) and 42 U.S.C. § 1981
(Count VII).  Both plaintiff and defendants have moved for
summary judgment on these claims.

        On July 23, 2020, Frank emailed her internal complaint
to Lichty and Alison Bryant, the Director of Human Capital.
Defendants concede that this complaint is protected activity
under Title VII.  The complaint alleged that Krapf discriminated
against her on the basis of her race and national origin by,
among other things, failing to pay her a bonus and taking away
certain job responsibilities.  She was terminated on September
17, 2020.  This is a period of less than two months between her

                             -17-

activity protected under Title VII and the adverse employment
action.

Frank argues that summary judgment should be granted
in her favor because defendants proffered legitimate non-
discriminatory reason for terminating her was pretext.  However,
defendants maintain that Frank has no evidence to demonstrate a
causal connection between her protected activity and her
subsequent termination.

The court "consider[s] 'a broad array of evidence' in
determining whether a sufficient causal link exists to survive a
motion for summary judgment."  LeBoon v. Lancaster Jewish Cmty.
Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007).  In the absence of
temporal proximity, such evidence may include intervening
antagonism or retaliatory animus, inconsistencies in employer's
reason for terminating employee.  Id. at 232-33.  While two
months is not unduly suggestive, our Court of Appeals has
nonetheless found a period of two months to be a relevant factor
in a finding of retaliation when other relevant circumstances
exist.  See Williams v. Phila. Hous. Auth. Police Dep't, 380
F.3d 751, 760 (3d Cir. 2004); see also Shellenberger v. Summit
Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003).

Frank argues that such retaliatory animus existed
based on both the negative tone and manner of Lukesh, Krapf's
third-party investigator, toward Frank's future at Krapf while

-18-

conducting his investigation, and Lichty's request that Frank consider a severance agreement after receipt of Lukesh's report. However, merely offering a severance package to an employee is insufficient to serve as evidence of retaliation.  Romero v. Allstate Ins. Co., 3 F. Supp. 3d 313, 323 (E.D. Pa. 2014). Lukesh's negative approach does not demonstrate retaliatory animus either.  Workplace discrimination laws are not a "general civility code."  Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998).  Frank has not presented sufficient evidence of retaliatory animus to establish a causal connection between her internal complaint and her termination.

Assuming Frank has stated a prima facie case of retaliation, Krapf has proffered a legitimate nondiscriminatory reason for her termination.  Frank admits she violated company policy in searching out payroll information about other employees.  As discussed above, there is no genuine dispute of material fact challenging Krapf's valid motivation for investigating Frank.  Canada, 49 F.4th at 350-51.  There is no evidence that Frank's termination was retaliatory or that the reason Krapf offered for her termination was a pretext.

Therefore, the motion of defendants for summary judgment as to her retaliation claims in Counts V, VI, and VII will be granted.  Plaintiff's motion for summary judgment as to these claims will be denied.

VI

Finally, Frank alleges defendants violated the FMLA by both interfering with Frank's ability to take federally-protected leave and retaliating against her for taking such leave (Count VIII).  Both parties moved for summary judgment as to this claim.

To prove that defendants interfered with Frank's ability to take FMLA-protected leave, she must establish:

> (1) she was an eligible employee under the FMLA; (2) the defendant-employer was subject to the requirements of the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave notice to the defendant of her intention to take FMLA leave; and (5) she was denied the benefits to which she was entitled under the FMLA.

Figueroa v. Merritt Hospitality, LLC, Civ. A. No. 11-1807, 2011 WL 4389585, at *3 (E.D. Pa. Sept. 21, 2011).  Defendants do not contest the first four prongs.  They argue only that Frank was not denied benefits under the FMLA.  Defendants are correct. There is no dispute that Frank was approved for and took FMLA leave.  As she was not denied this benefit, her interference claim fails as a matter of law.  Capps v. Mondelez Glob., LLC, 847 F.3d 144, 156 & n.11 (3d Cir. 2017).

Defendants' motion for summary judgment as to plaintiff's interference claim will be granted, and plaintiff's motion for summary judgment as to this claim will be denied.

Frank's claim that defendants retaliated against her for taking FMLA leave is considered under the familiar burden-shifting framework established by McDonnell Douglas.  Defendants argue that plaintiff is unable to establish a prima facie case of retaliation because there is no evidence that her decision to take FMLA leave and her termination are causally related.  Frank took FMLA leave on August 17, and she was terminated on September 17, a month later.  In Kuri v. Meridian Bank, the court found that a period of two weeks between an employee taking FMLA leave and the date of his or her termination was insufficiently close to demonstrate temporal proximity "suggestive of discrimination."  Civ. A. No. 21-4694, 2023 WL 324506, at *2, *5 (E.D. Pa. Jan. 19, 2023).

Frank also argues that the severance offers support her FMLA retaliation claim.  Lichty first discussed a severance package with Frank after she requested FMLA leave.  Lichty delayed in sending Frank the requisite paperwork to have her leave approved in order to request that Frank consider taking a severance package instead of going out on FMLA leave.  On August 21, 2020, Frank was offered severance again, which would have included a covenant not to sue.  Frank responded through counsel that she would not accept an offer of six weeks of severance, and instead, requested eighteen weeks.  As discussed above, merely offering severance is insufficient to serve as evidence

of retaliation and instead, an employer must deny benefits promised under an executed agreement.   Romero, 3 F. Supp. 3d at 323.   As no settlement agreement was signed, continuing to offer a severance package to Frank is insufficient evidence of retaliation.

There is no dispute of material facts here.   Frank's termination was not motivated by her request to take FMLA leave. Thus, the motion of defendants for summary judgment as to the retaliation claim of Count VIII will be granted, and plaintiff's motion for summary judgment will be denied.